UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| CRYSTAL D. LISTER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:20-CV-18-HAB ) |
| ANDREW SAUL, Commissioner of the Social Security Administration[1], | ) ) ) ) ) |
| Defendant. | ) ) |

## OPINION AND ORDER

This matter comes before the Court on Plaintiff Crystal Lister's ("Lister") appeal of the Social Security Administration's Decision dated December 6, 2018 (the "Decision"). Lister filed her Complaint against Commissioner of Social Security (ECF No. 1) on March 17, 2020. Lister filed her Opening Brief (ECF No. 11) on October 13, 2020. Defendant Andrew Saul, Commissioner of the Social Security Administration (the "Commissioner"), filed his Memorandum in Support of Commissioner's Decision (ECF No. 12) on November 19, 2020. Lister filed her reply (ECF No. 13) on December 7, 2020. This matter is now ripe for determination.

## ANALYSIS

**1.** *Standard of Review*

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. This Court must affirm the ALJ's decision if it is supported by substantial

---

[1] Andrew Saul is now the commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). See also Section 205(g) of the Social Security Act, 42 USC § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla of proof." *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001). It means "evidence a reasonable person would accept as adequate to support the decision." *Murphy v. Astrue*, 496 F.3d 630, 633 (7th Cir. 2007); *see also Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation and quotations omitted).

In determining whether there is substantial evidence, the Court reviews the entire record. *Kepple*, 268 F.3d at 516. However, review is deferential. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). A reviewing court will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)).

Nonetheless, if, after a "critical review of the evidence," the ALJ's decision "lacks evidentiary support or an adequate discussion of the issues," this Court will not affirm it. *Lopez*, 336 F.3d at 539 (citations omitted). While the ALJ need not discuss every piece of evidence in the record, she "must build an accurate and logical bridge from the evidence to [the] conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Further, the ALJ "may not select and discuss only that evidence that favors his ultimate conclusion," *Diaz*, 55 F.3d at 308, but "must confront the evidence that does not support his conclusion and explain why it was rejected," *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Ultimately, the ALJ must "sufficiently articulate his assessment of the evidence to assure" the court that he "considered the important evidence" and to enable the court "to trace the path of the ALJ's reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (internal quotation

2

marks omitted)).

## 2. *The ALJ's Decision*

A person suffering from a disability that renders her unable to work may apply to the Social Security Administration for disability benefits. *See* 42 U.S.C. § 423(d)(1)(A) (defining disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but also any other kind of gainful employment that exists in the national economy, considering her age, education, and work experience. § 423(d)(2)(A).

If a claimant's application is denied initially and on reconsideration, she may request a hearing before an ALJ. *See* 42 U.S.C. § 405(b)(1). An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, 3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether she has the residual functional capacity to perform her past relevant work, and (5) whether the claimant is capable of performing any work in the national economy. *See* 20 C.F.R. § 416.920(a); *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

At step one, the ALJ found that Lister has not engaged in substantial gainful activity since January 19, 2017, the application date. At step two, the ALJ determined that Lister has the following severe impairments: cervical and lumbar spine degenerative disc disease with radiculopathy, disc herniation, and disc bulge; migraine headaches; right shoulder osteoarthritis status-post surgery;

3

history of MRSA; bipolar disorder; depression; anxiety; post-traumatic stress disorder; and agoraphobia. The ALJ further found that Lister has the non-severe impairment of kidney stones.

At step three, the ALJ found that Lister does not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925, and 416.926)." (R. 18). At step four, the ALJ found that Lister has the residual functional capacity ("RFC") to:

> [p]erform sedentary work as defined in 20 CFR 416.967(a) with the following limitations: she requires a sit/stand option, allowing her to shift from either sitting or standing at intervals of approximately 30 minutes, provided she does not leave the workstation and the shifting of positions results in her being off-task no more than 1-2 minutes with each position shift; she is incapable of climbing ladders, ropes, and scaffolds and is incapable of kneeling, crouching, and crawling; she is capable of occasionally climbing stairs and ramps and occasionally balancing and stooping; she is incapable of reaching overhead with the dominant right upper extremity but is capable of frequently reaching in all other directions with the bilateral upper extremities; she is capable of frequent rotation, flexion, and/or extension of the neck in all directions; she is capable of no more than occasional exposure to extreme temperatures, bright or flashing lights, and vibrations; she must avoid all exposure to hazards, including unprotected heights and moving mechanical parts; she is able to understand, remember, and carry out simple instructions and tasks and perform work that has no strict time or high quota demands and is in a routine work setting that has only occasional changes in the work routine; she is capable of maintaining attention and concentration for up to 2 hours at a time in the performance of simple tasks; she is capable of occasional, brief interaction with the general public, co-workers, and supervisors but is incapable of performing tandem tasks or working in a team environment; and she would be off task up to 10% of the workday in addition to regularly scheduled breaks due to medication side effects and the combined effects of her other impairments.

(R. 21).

At step five, the ALJ determined that Lister is unable to perform her past relevant work. (R. 25). However, the ALJ found that there are jobs that existed in significant numbers in the national economy that she can performed. (R. 26). Therefore, the ALJ found that Lister has not been under

4

a disability since January 19, 2017, the date the application was filed. (R. 31.)

### 3. *Listing Evaluation*

Lister argues that the ALJ erred by failing to consider whether she met or medically equaled Listing 11.02 due to her migraines. The listings specify the criteria for impairments that are considered presumptively disabling. 20 C.F.R. § 416.925(a). In considering whether a claimant's condition meets or equals a listed impairment, "an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). And as with all analyses by the ALJ, the ALJ must "build a logical bridge from the evidence to [] conclusion." *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). To demonstrate that a listing is met or equaled, the claimant bears the burden of showing that his impairment satisfies "all of the various criteria specified in the listing." *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006) (dictation omitted).

The ALJ considered listings 1.02 (joint dysfunctions), 1.04 (disorders of the spine), 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (trauma- and stressor-related disorders). The ALJ did not consider any listings for Lister's severe impairment of migraines. There is no specific listing for migraines or headaches, but the Commissioner "routinely considers [this] impairment[] under the criteria for the Listing [for epilepsy]," which is 11.02. *Horner v. Berryhill*, No. 17 C 7586, 2018 U.S. Dist. LEXIS 138660, at *4 n.1 (N.D. Ill. Aug. 16, 2018)); *see also Kwitschau v. Colvin*, No. 11 C 6900, 2013 U.S. Dist. LEXIS 162147, at *9-10 (N.D. Ill. Nov. 14, 2013) (internal citations omitted) ("There is no specific impairment listing for migraines. However, they can be analogized to the provisions for *petit mal*, or non-convulsive, seizures in [§11.02] of the Listing of Impairments."). In order to meet Listing

5

11.02, Lister must suffer from more than one medically severe migraine headache per week, despite at least three months of prescribed treatment. While the determination of whether a listing is met or equaled is ultimately a determination for the ALJ, Social Security regulations require an ALJ to consider the opinions of medical experts in making this determination. *Barnett*, 381 F.3d at 670 ("Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue."); 20 C.F.R. § 416.926.

The Commissioner acknowledges that the Seventh Circuit has three criteria for an ALJ's evaluation of whether a claimant medically equals a listing. *Barnett v. Barhnart*, 381 F.3d 664, 668 (7th Cir. 2004). According to the Seventh Circuit's decision in *Barnett*, the ALJ must identify the relevant listing by name, must give more than a perfunctory analysis of that listing, and must consider expert evidence on the issue of medical equivalence with regard to that listing. *Id.* The Commissioner acknowledges that the ALJ in this case did not fulfill the first two criteria, but he asserts that this error is harmless because the ALJ considered the opinions of the state agency physicians. While the ALJ's consideration of a Social Security Administration evaluation form (such as those from the state agency physicians) may satisfy the medical equivalence opinion requirement in some circumstances, it does not do so here.

Two state agency physicians each completed a disability determination form. (R. 79-114). The ALJ did consider both state agency opinions in the decision. (R. 24). However, the state agency physicians focused on Lister's spine disorders, major joint dysfunction, and anxiety. (R. 85, 87, 102-03.) Neither physician considered Lister's migraines or any listing related to migraines. While the state agency physicians acknowledge that Lister alleges disability in part due to her migraines, neither physician discusses nor analyzes any evidence regarding her migraines. (R. 90, 108-09.)

6

The state agency physicians instead focused on her spine disorders, her joint dysfunction, and her mental impairments. *Id.* There is nothing in the state agency physicians' reports that addresses Lister's migraines, and the ALJ does not explain in the decision that he relied on the state agency opinions to find that Lister's migraines did not meet or medically equal Listing 11.02. "[A]n ALJ should mention the specific listings he is considering and his failure to do so, if combined with a 'perfunctory' analysis, may require a remand." *Ribaudo*, 458 F.3d at 583. The ALJ should completely address the issue of whether Lister's migraines meet or medically equal Listing 11.02.

More problematically, the Commissioner's argument defies logic. Not only did the state agency physicians not analyze or discuss any evidence regarding Lister's migraines, but the ALJ specifically provided those opinions little weight because they "did not consider the environmental limitations caused by the claimant's migraine headaches." (R. 24). The ALJ cannot logically both rely on the state agency opinions to support his failure to consider Listing 11.02, but also provide those same opinions little weight for their failure to consider Lister's migraines in their RFC assessment. With no discussion of Listing 11.02, remand is appropriate.

The Commissioner offers two further arguments to support its claim that the ALJ's failure to consider Listing 11.02 is harmless error, neither of which are persuasive. Harmless error occurs when the reviewing court is "satisfied that no reasonable trier of fact could have come to a different conclusion, in which event a remand would be pointless." *Sarchet v. Chater*, 78 F.3d 305, 309 (7th Cir. 1996). First, the Commissioner asserts that a negative brain MRI is indicative that Lister's migraines were not as severe as alleged. However, MRI's are used to rule out other causes of pain, not to rule out the existence of migraines. The Seventh Circuit has pointed out that MRI's are used "*to rule out other possible causes of headache* – such as a tumor – meaning that an unremarkable

7

MRI is completely consistent with a migraine diagnosis." *Moon v. Colvin*, 763 F.3d 718, 722 (7th Cir. 2014) (internal citations omitted) (emphasis in original).[2] Therefore, reliance on nothing more than a negative MRI is error.

Second, the Commissioner asserts that Lister "has offered no competing medical opinion that her impairments equal Listing 11.02." [ECF 12 at 5]. Listing 11.02 (for epilepsy) has two possible criteria for medical equivalency. The Listing can either be met where the claimant experiences generalized tonic-clonic seizures at least once per month for three consecutive months, or where the claimant experiences dyscognitive seizures at least once per week for three consecutive months, despite adherence to prescribed treatment. *See* 20 C.F.R. Part 404, Subpt. P, App. 1 (Listing 11.02(A) and (B)). When applying this Listing to migraine headaches, the claimant must experience migraines at these frequencies in order to equal the severity required to meet or medically equal the Listing. *See* SSA Questions & Answers 09-036, at 3 (discussing Listing 11.02's predecessor, Listing 11.03).

At the hearing, Lister testified that she suffers from migraines that require lying down and medication four to six times per week, and she had been suffering from migraines for a year and a half at that time. (R. 54). In March 2016, Lister complained of "8-10 headaches per day." (R. 523, 526). She was on opiates (Norco) to control all of her pain, including headaches, back pain, and shoulder pain. (R. 524). In September 2016, Lister told her neurologist she was suffering from headaches that last from three to eight hours that require ibuprofen, lying in the dark, and using cold packs for relief. (R. 511). She continued to rely on Norco for pain relief due to her headaches,

---

[2] MRI's are included as "tests to rule out other causes for your pain." "Migraines: Tests and Diagnosis," Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/migraine-headache/diagnosis-treatment/drc-20360207 (visited July 16, 2021).

as well as her back and neck pain. (R. 513, 518). In February 2017 she reported that she continued to suffer from headaches favoring one side "on top or behind her eyes." (R. 549). She stated that she had suffered from headaches every day for the previous two to three months. (R. 549). She reported that darkness helps relieve her headaches. (R. 549). Her physician noted that the following medications had been tried but "did not help: Tylenol, ibuprofen, naproxen, Celebrex, meloxicam, Flexeril, oral steroids pills (prednisone)." (R. 549). Lister was taking hydrocodone-acetaminophen as needed for her headaches, but Riboflavin was added at this visit as a daily medication for headache prevention. (R. 552). By March 2017, Lister stated she was still suffering from headaches daily, and that riboflavin did not help. (R. 617). Her doctor started her on Imitrex at this appointment. (R. 619). In September 2018, Lister was still complaining of daily migraine headaches. (R. 1180). She reported that her migraines began two and a half years prior, that the headaches occur every day, and have fluctuated over time. (R. 1180). She reported that her headaches are associated with nausea, sensitivity to light, sensitivity to sound, and sensitivity to smells. (R. 1180). She stated that a "dim and quiet environment, rest and sleep" helped relieve her headaches. (R. 1180). She was still on Imitrex in 2018, yet her pain "remain[ed] the same." (R. 1180).

  Lister has at least alleged migraines that occur at a frequency that could meet or medically equal Listing 11.02. The ALJ failed to consider or discuss this Listing, and as a result, the Court cannot be sure that the ALJ properly considered the medical evidence that shows Lister asserting daily headaches for over two years that did not improve with medication, and that required she lie down in a dark room to alleviate her pain. Without proper consideration of the medical evidence and the Listing requirements, the Court cannot determine that the ALJ would come to the same

9

conclusion of no disability had he considered her migraine evidence with Listing 11.02. Therefore, the ALJ's failure to consider Listing 11.02 or properly consider Lister's migraine headaches is not harmless error.

*4. Other Issues*

Lister makes several other arguments regarding her RFC and subjective symptoms. Because the Court is remanding on the above issue, it need not discuss the rest of the arguments addressed in Lister's brief. Addressing the above issues may alter the RFC determination. Lister may address these issues on remand.

## CONCLUSION

For the foregoing reasons, the Decision is remanded for further proceedings consistent with this Opinion and Order. The CLERK is DIRECTED to enter judgment in favor of the Plaintiff and against the Commissioner.

SO ORDERED on July 22, 2021.

s/Holly A. Brady  
JUDGE HOLLY A. BRADY  
UNITED STATES DISTRICT COURT